IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DOUG FREDERICK, *as personal representative of the estate of Edeltraud Kron*,<br><br>          Plaintiff,<br><br>vs.<br><br>BILLINGS PARTNERS, LLC, *d/b/a* Canyon Creek Memory Care,<br><br>          Defendant. | CV 21-07-BLG-SPW-TJC<br><br><br>**FINDINGS AND RECOMMENDATIONS AND ORDER OF U.S. MAGISTRATE JUDGE** |

Plaintiff Doug Frederick, as personal representative of the estate of Edeltraud Kron (the "Estate"), brings this action against Billings Partners, LLC, doing business as Canyon Creek Memory Care ("Canyon Creek"), asserting a claim for wrongful death and survival based on Canyon Creek's alleged negligence.  (Doc. 1.)

Before the Court is Canyon Creek's Motion for Summary Judgment.  (Doc. 21.)[1]  The motion is fully briefed and ripe for the Court's review.  For the

---

[1] Canyon Creek's Motion in Limine (Doc. 24) and Motion to Strike (Doc. 36) are also addressed below.

1

following reasons, the Court recommends that Canyon Creek's motion be **GRANTED**.

## I. CANYON CREEK'S MOTION FOR SUMMARY JUDGMENT

### A. Factual Background[2]

In September 2017, Edeltraud Kron ("Traudel"), became a resident of Canyon Creek. Traudel was 84 years old at the time, and she suffered from Alzheimer's disease, dementia, hypertension, GERD, and type II diabetes. The Estate alleges that Canyon Creek was negligent in caring for Traudel, which ultimately caused her death.

The Estate first alleges Traudel needed assistance maintaining her oral hygiene. It is alleged Canyon Creek failed to do so, resulting in dental deterioration, tooth extractions, and being limited to a soft food diet. It is further alleged that Canyon Creek did not provide Traudel with the required soft food diet, resulting in significant weight loss.

The Estate also alleges Canyon Creek was negligent in monitoring Traudel's urine and blood glucose levels. Traudel was diagnosed with urinary tract infections in October and November 2019 and January 2020, and the Estate contends her elevated blood sugars contributed to that condition.

---

[2] The background facts set forth here are relevant to the Court's determination of the pending motion for summary judgment, are taken from the parties' submissions, and are undisputed unless otherwise indicated.

By January 28, 2020, Traudel's condition had significantly deteriorated; she had increased blood glucose, a urinary tract infection, and had lost weight.  Dr. Larry Severa of the Billings Clinic was Traudel's primary physician while she was at Canyon Creek.  Dr. Severa presented Traudel's family with the option to treat her diabetes with insulin and continue treating her urinary tract infection with antibiotics.  The family elected not to have insulin administered and requested a hospice referral.  Hospice care was initiated, and Traudel died the following day on January 29, 2020.

The Estate brings this survival and wrongful death action based on the alleged negligence of Canyon Creek in caring for Traudel.

### B.    Legal Standard

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party.  *Id*.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  A moving party without

3

the ultimate burden of persuasion at trial, may also carry its initial burden on summary judgment by "show[ing] that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In such circumstance, summary judgment is appropriate because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and . . . by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

4

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. That is, "if a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *T.W. Elec. Serv.*, 809 F.2d at 631. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

## C.    Discussion

Canyon Creek argues the Estate cannot establish a wrongful death claim because it has failed to present expert testimony to establish that any alleged breach of Canyon Creek's standard of care caused Traudel's death. (Doc. 22 at 2.) The Estate counters that expert testimony is not required to establish causation in this case. (Doc. 27 at 7.) The Estate also contends that the expert testimony presented is sufficient to establish causation relative to Traudel's high glucose levels and urinary tract infections. (*Id.* at 9-10.)

Because the Court's jurisdiction over this action is based on diversity of citizenship, the Court must apply Montana substantive law. *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). To prove a negligence action under Montana law, a plaintiff must establish four elements:

5

(1) duty; (2) breach of duty; (3) causation; and (4) damages.  *Wiley v. City of Glendive*, 900 P.2d 310, 312 (Mont. 1995).

### 1.     Expert Testimony Is Required

To show that Canyon Creek breached a duty of care in this case, the Estate "must establish the standard of care by which to measure [Canyon Creek's] actions; in other words, [the Estate] must establish the degree of prudence, attention, and caution [Canyon Creek] must exercise in fulfilling that duty of care." *Dubiel v. Mont. Dept. of Transp.*, 272 P.3d 66, 69 (Mont. 2012).  If the question is "sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact" expert testimony is required.  *Id.* at 70.  This requirement has commonly been applied in medical malpractice actions and other claims of professional negligence,[3] but it has also been applied in other cases where the issues of duty and breach are not within the common experience of a layperson.  *See, e.g.*, *Dayberry v. City of E. Helena*, 80 P.3d 1218, 1222-23 (Mont. 2003) (expert testimony required to establish standard of care for pool design safety); *Dubiel*, 272 P.3d at 70 (expert testimony necessary to establish standard of care for winter road closures).

---

[3] *See Zimmerman v. Robertson*, 854 P.2d 338, 339 (Mont. 1993) (noting that the requirement for expert testimony in medical malpractice cases had been extended from medical malpractice to claims against attorneys, dentists, orthodontists, manufacturers of pharmaceuticals, and title abstractors).

In this case, the standard of care of an assisted living facility in providing for Traudel's oral hygiene, and in monitoring her urine and blood glucose levels, is almost certainly beyond the common experience of the trier of fact. Thus, expert testimony is required to establish the applicable standard of care in these circumstances.

The same is true regarding the causation element of a negligence claim. The Montana Supreme Court has made clear that expert testimony is necessary to establish causation when the issue is not readily apparent to a layperson. *Cain v. Stevenson*, 706 P.2d 128, 131 (Mont. 1985). *See also Bleek v. Supervalu, Inc.*, 95 F. Supp. 2d 1118, 1121 (D. Mont. 2000) ("qualified medical testimony" from an expert witness is necessary to "establish causation of [an] injury where the nature of the injury is such that laymen can neither plainly see, nor infer from the injury, its cause . . . .").

Here, it is undisputed that Traudel suffered from multiple comorbidities, including Alzheimer's disease, dementia, and diabetes. (Doc. 29 at 2.) It is also undisputed that, while at Canyon Creek, she experienced tooth extractions, weight loss, elevated blood glucose and urinary tract infections. (*Id.* at 2-3.) Whether any breach of the standard of care caused, or worsened, Traudel's medical conditions, and was ultimately a cause of her death, would not be readily ascertainable by a layperson. Thus, expert medical testimony is also required as to causation.

7

If expert medical testimony is required to establish causation, a medical expert's testimony is admissible "if it is based on an opinion that it is 'more likely than not' that the alleged wrongdoing caused the plaintiff's injury." *Hinkle v. Shepherd Sch. Dist. # 37*, 93 P.3d 1239, 1246 (Mont. 2004) (citing *Butler v. Domin*, 15 P.3d 1189, 1192 (Mont. 2000)).

## 2.     Expert Testimony Presented

The Estate has identified two expert witnesses—Channa Kelly, a licensed nursing home administrator, and Dr. John Addison, MD, a geriatrician. (*See* Doc. 23-4.) The Court has not been provided with any additional disclosures under either Fed. R. Civ. P. 26(a)(2)(B) or (C).[4]

Ms. Kelly's expert report contains two opinions relative to standard of care. First, she opines that Canyon Creek "failed to provide adequate oral hygiene," which resulted in Traudel's tooth decay and weight loss. (Doc. 23-4 at 7.) Second, Ms. Kelly states that Canyon Creek "fell below the standard of care by not notifying the responsible party of [the] sugar levels found in [Traudel's] urine." (*Id.* at 12.) Dr. Addison provided additional support for the latter opinion, and agreed that Canyon Creek had the responsibility to notify the health care power of

---

[4] The parties reference the deposition testimony of Dr. Severa, but it is not clear whether either party identified him as an expert witness and disclosed his proposed testimony pursuant to Rule 26(a)(2)(B) or (C).

attorney of changes in a resident's medical condition.  (Doc. 29-1 at 42:7-20,
42:24-43:20.)

Dr. Addison did not provide any additional standard of care opinions.  In his
expert disclosure, he does state that Traudel's frequent urinary tract infection were
"the biggest immediate threat to her," but found they were dealt with appropriately
at the time of their diagnosis.  (Doc. 23-4 at 20.)  He also states that glucose in her
urine was likely an added risk factor for her recurrent urine infections, and opines
that checking her blood glucose levels and treating her diabetes with oral agents or
insulin would have likely been "appropriate" in October 2019.  (*Id.*)  But he does
not state that it was medically inappropriate not to do so, or that the treatment of
her diabetes and elevated glucose in her urine by Dr. Severa or Canyon Creek was
below the standard of care.

Therefore, the Estate's expert testimony is limited to the two alleged
violations of the standard of care identified by Channa Kelly: that Canyon Creek
(1) failed to provide adequate oral hygiene, resulting in tooth decay and weight
loss; and (2) Canyon Creek failed to notify the responsible party of the elevated
sugar levels in Traudel's urine.

The Estate must further establish that these alleged violations of the standard
of care caused injury to Traudel and were a cause of her death.  Since the causal
relationship between Traudel's death and the alleged failure to provide adequate

9

oral hygiene, and/or the failure to notify the responsible party of her urine glucose levels, would not be within the common experience of the trier of fact, expert testimony is required on this issue as well.

At oral argument, the Estate acknowledged that it had not established expert testimony as to the causal relationship between Traudel's tooth decay and/or weight loss and her death. The Estate argued, however, that expert testimony was not needed on this issue, and that evidence of neglect, malnourishment, and dehydration could be presented by lay witnesses.

The Montana Supreme Court has said that expert testimony is not necessary to prove causation where the nature of the injury is such that laymen can plainly see or infer its cause. *Cain,* 706 P.2d at 131. But given that Traudel suffered from a host of other serious medical conditions, it would be impossible without expert testimony for the trier of fact to determine which condition caused or contributed to her death, and whether Traudel's oral hygiene/weight loss had any causal relationship to her death. The record shows there are other potential causes for her weight loss and its relationship to her death. Dr. Severa noted, for example, that weight loss is an unavoidable consequence of dementia, and it can be extremely rapid at the end of life. (Docs. 23-4 at 9; 29 at ¶ 28.) Therefore, the Estate has not established that any violation of the standard of care relative to the alleged failure to provide for proper oral hygiene was a cause of Traudel's death.

10

The Estate has also failed to provide expert testimony to establish causation as to the alleged failure to notify the responsible party of elevated glucose in Traudel's urine.  Ms. Kelly did not provide any opinion that this alleged failure was causally related to Traudel's death.  She only states that, if notified, the "family might have opted to actively treat the diabetes and change the diet."  (Doc. 29 at ¶ 12.)

Dr. Addison also did not address whether the failure to notify family of the increase in glucose in the urine was a cause of her death.  But even if the family had been notified, and even if they had elected to actively treat her condition, Dr. Addison's testimony does not establish that it would have increased the likelihood of Traudel's survival.  While Dr. Addison states that it may have been "appropriate" to check her blood glucose level and treat Traudel's diabetes "in or about October of 2019," he only opines that such action "may have further reduced the risk of the frequent urine infections."  (Doc. 23-4 at 20.)  But he also points to Traudel's other risk factors for urinary tract infections, including her dementia, her need for manual personal hygiene, and her post-menopausal urethral atrophy.  (*Id.*) He further observed that "[t]he larger picture indicates that this woman was significantly impaired by her senile dementia[.]  She was old, frail, and with multiple comorbidities[.]"  (*Id.*)

11

Dr. Addison did provide an opinion regarding Traudel's life expectancy, stating "[t]he life expectancy of this woman was almost certainly less than three years, and more likely less than two years even if her acute urinary infections had been prevented, and her diabetes brought under good control." (*Id.*)  The Estate argues that this conclusion supports its argument that "had her blood sugars and UTI's been under control, Traudel would have lived longer." (Doc. 27, at 9.)  But Dr. Addison's opinion only addresses Traudel's maximum life expectancy in the absence of the medical conditions she experienced.  It does not provide evidence that treatment could have been initiated which would have likely prevented her urinary tract infections or brought her diabetes under control, or that she would have probably survived longer had treatment been initiated.  Dr. Addison only states that treatment may have reduced the risk of frequent urinary tract infections, and there is no evidence that treatment would have likely brought her diabetes under good control.  In fact, Dr. Addison's deposition testimony appears to disavow the conclusion that treatment would have extended Traudel's life.  Dr. Addison was asked if Traudel would have lived longer if Dr. Severa had been able to treat her diabetes and her UTI.  (Doc. 23-6 at 14:1-24.)  Dr. Addison responded:

> Well, not necessarily.  Often these are the final events of people.  This is how -- how people end their lives sometimes.  They usually do have an acute illness, and urinary tract infections, complications of diabetes are -- are in that frequent things that end up being the end -- end of people's lives . . . .

(*Id.* at 14:25-15:6.)

Collectively, then, the expert testimony presented by the Estate establishes that if the family had been notified of high glucose levels in Traudel's urine they *might have* chosen to actively treat the condition. If they chose to treat the condition, it *may have* reduced the risk of frequent urine infections. (Doc. 23-4 at 20.) And, *if* her urine infections had been prevented and *if* her diabetes was brought under good control, she could have lived for some period of less than two years.

As discussed above, however, expert testimony as to causation must be based on an opinion that it is "more likely than not" that the alleged negligence caused the plaintiff's injury. "Might have," "may have," or "could have" is not sufficient to meet that standard. *See, e.g.*, *Butler*, 15 P.3d at 1192 (expert testimony that conduct "could have" caused injury did not indicate it was "more likely than not"); *Hinkle*, 93 P.3d at 1246 (affirming summary judgment, finding testimony that defendant's actions "could have" caused condition did not meet threshold); *Wise v. Rust*, 2010 WL 4929189, at *11-12 (D. Mont. Nov. 30, 2010) (conclusion that trauma "may be" cause of injury did not create issue of fact as to causation to defeat summary judgment); *McClue v. Safeco Ins. Co. of Ill.*, 354 P.3d

604, 611 (Mont. 2015) (testimony that trauma "could have" caused condition was not sufficient for expert to testify as to causation).[5]

Therefore, the Estate has not presented required expert testimony to carry its burden of proof as to an essential element of its negligence claim. Summary judgment is appropriate.

## II.    OTHER PRETRIAL MOTIONS

Also before the Court are Canyon Creek's Motion in Limine (Doc. 24) and Motion to Strike (Doc. 36). As this case is before the undersigned on referral from District Court Judge Susan P. Watters, the Motion in Limine will be more appropriately reviewed by Judge Watters, should there be a trial in this matter. This Court's scheduling order provides that Judge Watters will schedule a deadline for motions in limine following the disposition of other pretrial motions. (*See* Doc.

---

[5] During oral argument, the Estate also asserted that Dr. Severa stated Traudel would probably have survived if her urinary tract infections and diabetes had been treated in late January 2020. This argument was derived from a video recording of a conversation between Traudel's family and Dr. Severa on the day prior to her death, and relates to her treatment at that time. (*See* Doc. 23-7 at 64:19-22.) In this recording, Dr. Severa told Traudel's family that if she was given antibiotics and her diabetes were treated, he "would expect that she would probably recover." (*Id.* at 68:17-25.) This statement was presented to Dr. Severa in his deposition by Canyon Creek, presumably in an attempt to show Traudel's death was the result of the family's decision not to institute further treatment, rather than the care provided by Canyon Creek. In his deposition testimony, however, Dr. Severa qualified that "[i]t is possible" Traudel would have recovered had she been treated on January 28, 2020. (*Id.* at 69:1-7.)

14

11 at ¶ 2.)  Canyon Creek's Motion in Limine will, therefore, be denied at this time, without prejudice.  Should Judge Watters reject these findings and recommendations and this case proceed to trial, Canyon Creek may renew its Motion in Limine according to the schedule established by Judge Watters.

Canyon Creek also filed a Motion to Strike the Estate's supplemental statement of disputed facts (Doc. 34), arguing the pleading was not timely and was filed without leave of the Court.  (*See* Doc. 37.)  The parties' supplemental statements of facts involved whether Dr. Severa was an agent of Canyon Creek. (*See* Docs. 32, 34.)  The Estate, for the first time in its response brief, "contends an ostensible agency relationship" between Dr. Severa and Canyon Creek "so any of his actions or omissions . . . would be attributed to Canyon Creek."  (Doc. 27 at 6.) But the Estate did not plead any agency claim or relationship in its Complaint. This argument, therefore, will be disregarded.  *Bullard v. Wastequip Mfg. Co. LLC*, 2015 WL 12766467, at *10 (C.D. Cal. Apr. 14, 2015) ("It is well-settled in the Ninth Circuit that parties generally cannot assert unpled theories for the first time at the summary judgment stage."); *Jack Palmer & Carwerks v. City of Missoula*, 2016 WL 247564, at *4 (D. Mont. Jan. 20, 2016) (declining to consider plaintiff's newly-asserted, unpled constitutional violation in response to motion for summary judgment; *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir.

15

2006) ("[S]ummary judgment is not a procedural second chance to flesh out inadequate pleadings.").

Moreover, these facts were not necessary to resolve Canyon Creek's Motion for Summary Judgment, and were not considered by the Court. There has been no expert testimony presented suggesting that Dr. Severa was negligent or that he breached any standard of care as to Traudel's treatment. Accordingly, Canyon Creek's Motion to Strike (Doc. 36) is denied as moot.

## IV.    Conclusion

Based on the foregoing, **IT HEREBY IS RECOMMENDED** that Canyon Creek's Motion for Summary Judgment (Doc. 21) be **GRANTED**.

It is **FURTHER ORDERED** that:

1.     Canyon Creek's Motion in Limine (Doc. 24) is **DENIED, without prejudice**; and

2.     Canyon Creek's Motion to Strike (Doc. 36) is **DENIED as moot**.


**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies

served on opposing counsel within fourteen (14) days after service hereof, or

objection is waived.  D. Mont. Local Rule 72.3.

     DATED this 30th day of November, 2022.


_____
TIMOTHY J. CAVAN
United States Magistrate Judge